The Honorable Judges of the United States Court of Appeals for the Tenth Circuit. Welcome and good morning. I can see a lot of counsel there wanting to stand up anyway, even though you're sitting at home or in the office. I get that. But anyway, I appreciate your attendance by Zoom today. I'm Judge Tymkiewicz in Denver. With me is Judge Holmes in Oklahoma and Judge McHugh in Utah. We have six cases this morning, a full flight of very interesting cases. We appreciate your attendance and hope you can help us understand the issues and the complexities a little bit better. We will take a break after the third case and then we'll finish up the final three. So without any further background, let's get started. Our first case is 20-1250, Hamric v. Wilderness Expeditions. And for the appellant is Mr. Dunleavy. You may proceed. Please, the court. I'm William Dunleavy for the appellant along with my co-counsel Stephen Justino. Alicia Hamric individually as representative of the estate of her husband, Gerald Hamric, and his next friend of her daughter, Ava Hamric. She is the appellant. We thank this court for the opportunity for this oral argument. Two weeks ago, I missed my Zoom training because I was actually doing a Fifth Circuit argument. And in preparing for that argument, I realized I was admitted to the Fifth Circuit more than 20 years ago, and I've been going to the Fifth Circuit for oral arguments for about 25 years, largely or nearly always over a summary judgment. Welcome to the Tenth Circuit. And I appreciate that, Your Honor. But like in the Fifth Circuit, here we are today on a summary judgment. Most of my appellate arguments in my career have been over summary judgments. Most of them have been over fact questions. And that's what we're here to talk about today. This is the clearest example I've ever had in my career of a fact question where the trial judge accepted the movements version of facts when I understand the rules require on summary judgment that the non-movements facts be accepted as true. I'll talk a little bit about what those facts are. It's a personal injury and it was decided on contract principles and based on a release of liability. Gerald Hamrick, a Texan, left his home in Keller, Texas at about 700 feet above sea level. He arrived in Salada, Colorado the next day. And the following day, he was taken by Appalese employees to a rappelling location over 9,000 feet in elevation. Tommy Query, the owner of Wilderness Expeditions, talked about 1,500 feet per day to acclimate. Mr. Query knew that this group from Keller, Texas, had left Keller the day before they arrived in Salada. He knew they were not acclimated to the elevation. He could see Gerald Hamrick was a man over 300 pounds, over six feet tall. He was not in good shape and he was not acclimated and Wilderness Expeditions knew that. He had a doctor's release, didn't he? He did, Your Honor. And with, excuse me, he did not technically have a doctor's release. He was released by a physician's assistant. We talked about that and said, there's a physician's assistant, a doctor. He did have paperwork signed off. We concede back that the medical paperwork was signed off. But Wilderness Expeditions had the opportunity to observe him before he was put on the rappelling site. More significantly, Wilderness Expeditions did observe him, did see that he was struggling, he was having difficulty leading up to the rappelling site, and then failed to tell him, failed to disclose to him the significant dangers. And the evidence in the record from Joshua Gearing, an employee of Wilderness Expeditions, was that they knowingly concealed this overhang at the location because they knew people would be afraid and wouldn't do the rappel if they had awareness of the danger of the risk. Afraid from the aesthetics of the overhang, not because it was in fact dangerous. Extraordinarily dangerous, right? Your Honor, with respect, we disagree. They knew that people would go inverted. And in the case of Mr. Hamrick, a 300-pound man who did go inverted, who could not get himself upright, and they did not take appropriate steps to get him upright as he was turning blue, that was a dangerous condition for him, for someone not in good condition, and they knew that. But let me step back. More fundamentally, as you alluded to initially, this is a release case. Now, we can be talking about all the risks that Mr. Hamrick faced, we can be talking about what they did and what they didn't do, but isn't the fundamental question whether he released them from liability for all of these parade of horribles that you've been talking about? And if that release is enforceable, why does any of this matter? Your Honor, because there are two fundamental questions. One, does the release act to release negligence claims? And then two, because under Colorado law and under Texas law, the release cannot release claims for gross negligence in Texas or willful and wanton negligence in Colorado. The issue, the second issue is the judge dismissed the claim for willful and wanton negligence when she should not have because those facts of a known significant risk of danger that they consciously disregarded in the face of the circumstances, Mr. Hamrick not being in good condition. That is the second fundamental question. Let me interrupt. She didn't dismiss the gross negligence claim. She didn't let you amend your complaint to add the gross negligence claim. I mean, that's a significant difference and a different standard of review, frankly. Yes, let us add them. And my understanding is in Colorado, those cannot be asserted from the get-go in the start of the case. This case was undergoing and in the process of discovery. We were still taking depositions when the summary judgment was granted. We had taken some depositions first in Texas. In Colorado, we went to Tennessee. We were still in the discovery process. So, we were still accumulating this information. That is an issue. Did you ever seek to amend the scheduling order to extend the time for when you could amend your complaint? No, Your Honor. We did not seek to amend the scheduling order. We sought relief to amend the complaint outside of the scheduling order. But you were bound by that scheduling order. Yes, we were, Your Honor. And doesn't the scheduling order create a different layer of argument that needs to be made in the context of seeking an amendment, specifically Rule 16b-4? You would need to invoke that and make an argument under it, would you not? Yes, Your Honor, we would on the amendment. But getting back... And you didn't do that, right? You didn't do that before the district court? You haven't made any argument to that effect above, right? Here. No, Your Honor. All right, then explain to me then why that's even relevant. Why the court's action is something that is error? Well, Your Honor, because the evidence that we have presented of willful and wanton negligence, Your Honor, we believe warrants the opportunity to amend, which we did seek. What I'm asking is, if you did not seek it by invoking the correct rule, and then the court denied you the amendment, then what basis do you have to claim error? In other words, you needed to invoke Rule 16, which I think I understood you to agree to, then if the court denies you an amendment, then what basis do you have to claim that that was error? Well, Your Honor, then I would go back to the fact question issue on the release. Well, let's talk about the release, and at least I think the premise of your suggestion that the court construed the facts in light most favorable not to the non-movement was predicated on the court's basically accepting the version of the release with the editing that was presented in the motion to dismiss. Is that right? That's absolutely correct, Your Honor. Okay, well, then explain to me why that really I mean, in its order on the motion to reconsider, expressly explain, did it not, that it had considered the full release. It understood the scope of the full release, and that should eliminate any concern about whether it's editing just for clarity hurt you, first thing. Second thing is, in a motion to dismiss context, it's an over review here. I've got the release, so even if district court had edited it in a way that was that created ambiguity, well, that created clarity that really shouldn't have existed from your perspective. I've got the release, so that doesn't bar you from making whatever argument you're going to make. So those two things, why does it matter in light of the fact that the court said it understood the full scope of the release despite its editing? And two, why does it matter? Because on appeal, I can look at the release, we can look at the release, and we know so what she edited it. Well, first, Your Honor, I'm going to take the next two minutes. I didn't say this at the start. I'd like to reserve three minutes for the end, so I'm going to stop when I have three minutes left. To answer the court's question, Your Honor, the trial court clearly accepted the movement's version of facts, which was the edited release. And yes, the court had full release, but in the order, it's clear she accepted the edited version, and that is significant, Your Honor, because she changed what the release said. Those are material changes, else they would not have been made. Gerald Hamrick, not a lawyer, not a judge, did not have the benefit of that edited version of the release. And it matters for the choice of law question because there were fact questions on the choice of law. Where was the contract formed? Where did the parties intend the contract to be applied? If you look at that release, edited or unedited version, Your Honor, that release says negligence exactly one time. And Texas law, which should have been applied, says you must expressly release negligence, and you must expressly state negligence in a manner that is conspicuous and clear. And that, under Texas law, requires different font, different color, bolding, underlining, italics. None of that was in this release. And the trial court said there's no outcome determinative difference between Colorado law and Texas law, and that is clearly an error of law because Colorado law, as the trial court noted, allows the release of negligence claims even without expressly stating the word negligence under the Rosen case. But Texas law doesn't allow that. Do you lose under Texas law then if word negligence in this release were capitalized? Your Honor, if it were conspicuous, and that would be a fact question, if it's bolded, if it's capitalized, different font, different color, bigger text, that would be a fact question. Is it conspicuous? We could lose under Texas law if it was decided that were conspicuous. But with this release, we cannot lose under Texas law because it is not conspicuous under Texas law. It is not bolded. It is not highlighted. It's the same color. It's buried in the text of this small, fine print document. Other than that, then, is there anything about this release that's problematic, other than its lack of conspicuousness? Your Honor, the lack of the express statement conspicuously of negligence is the problem with this release. There is a problem of the medical that the court already alluded to. Is it signed by a doctor? But the problem with the release is the lack of any expression of negligence in a conspicuous way. And with that, Your Honor, I see I have two minutes left that I'd like to reserve. All right. Thank you. We'll hear from Colorado Bar Number 11684 or Defendant Appley, Wilderness Expeditions, Inc. The outdoor recreation industry is a major part of the economy in the state of Colorado. To promote this industry, Colorado allows providers of outdoor recreational activities to protect themselves against liability for negligence through the use of exculpatory agreements, commonly called releases or waivers of liability. These releases or waivers are enforceable if they clearly express an intent to extinguish liability. Wilderness Expeditions, Inc., or WEI, provides outdoor recreational activities in Colorado and only in Colorado. To protect itself from liability for negligence, WEI requires participants to sign and return a two-page release. This release consists of two forms, the registration form and the medical form. Mr. Mead, if I may, let me interrupt you for a second and go to this question. The district court, when presented with the choice of law issue relative to Texas and Colorado, applied a outcome determinative principle in deciding that it would go to Colorado law. What is the basis for that principle in Colorado law? I looked at Colorado cases, and I could not find Colorado cases that have applied that principle. The court reference, at least my recollection is, and you can correct me if I'm wrong, Colorado federal district court cases. And so, what I'm trying to understand is, since we're in the context of the diversity matter, what the Colorado origin or genesis is of this outcome determinative principle, if you know. Interesting question, Your Honor. I'm not sure I can give you a straight, clear answer. You're right. I believe the cases that talk about needing an outcome determinative conflict are federal cases reported to apply Colorado law. This principle is a bedrock starting point for conflict analysis. I believe you'll find it in the restatement second, somewhere in the introductory provisions. It's also a matter, I believe, of logic or common sense. And maybe you're focusing on the phrase outcome determinative versus. I am, and I didn't find that in the restatement either. You're saying that that concept of outcome determinative, in other words, is threshold determination that a court would say, look, I looked at both laws. The application of them would not be outcome determinative. Therefore, I apply the forum state. Is that principle in the restatement? I thought it was, Your Honor, but I can't give you a citation. Okay. I know there's numerous cases citing that. And also, if there is the other presumption, which is the forum will apply the law of the forum, unless there's good reason to apply the other state. That again is one of the starting points for the most significant relationship test under the restatement. You don't apply the law of another state unless there's good reason to move beyond the forum. So the presumption is you apply the law of the forum. And coinciding with that presumption is you don't even do a conflict analysis if there is no conflict. It's the basic idea. If the laws aren't in conflict, why would you waste time doing a conflict analysis? If it's the same result in both states, there's no need to do an analysis. And therefore, you go back to the presumption of the law of the forum controls. Mr. Mead, Mr. Dunleavy said that really the crux of the matter is that the word negligence was not conspicuous enough and kind of a two-part question. And do you lose under Texas law based on his interpretation? And I guess number two is, is Colorado law different on this question of whether the word negligence needs to be conspicuous? Taking your first question first, do we lose under Texas law? If the court applies Texas law, no, we don't. The court below three times rejected plaintiff's argument that the release is not enforceable under Texas law. And the court was correct. If I can expand on that before I go to your second question, plaintiff says that Texas requires that the word negligence itself be conspicuous. That is not correct. The lead case in Texas is Dresser Industries versus Page Petroleum. In that case, the court says something must appear on the face of the contract to attract the attention of a reasonable person when he looks at it. And it is the clause or the exculpatory provision. Quote, when a reasonable person against whom a clause is to operate, ought to have noticed it, the clause is conspicuous. So the test for conspicuousness applies to the clause, the exculpatory provision, not the specific word negligence. Here we have an exculpatory provision, which is set off by a title in bold print underlined, release of liability, user indemnity agreement, and also says by signing my initials below, I certify that this is a release of liability in bold print twice, Hamrick initialed both places. The exculpatory provision was conspicuous. Texas does not require that the word negligence itself be conspicuous. And then a sub point on that counsel said that whether something is conspicuous is a question of fact that is not correct. The Texas statute says whether it's conspicuous is a question of law. So the court itself determines whether something is conspicuous under Texas law. And I'm sorry, Your Honor, I lost track of your second question. Well, I guess applying the Colorado law, I want your interpretation of the Colorado law. Okay. Colorado law does not require the word negligence in the document, as long as the document clearly expresses an intent to extinguish liability. But here the document does say negligence. So it passes both tests either way. I'm turning to counsel's argument about the court accepting a factual dispute between the parties because the court went with our so-called version of the release. The ellipses or deletions that counsel focuses on are phrases, two phrases repeated in the release. One phrase was the phrase or my child. The release is set up so it can cover both an adult participant and the child who is participating when the release is signed by an adult. So the release covers both yourself or your child. The phrase or my child appears many times. This case does not involve a child. It just involved Gerald Hamrick, an adult. So when looking at the language, there's no need to consider the phrase or my child. So that was one of the deletions. The inclusion of that phrase in the release doesn't make it ambiguous. And the deletion of that phrase and considering the language doesn't mean you're creating a second version of the release. The other phrase that was deleted is a long phrase about other entities who were being released by the release. The USDA Forest Service, the Colorado Parks Recreation Department, many governmental agencies who own the land where the activity occurred. If plaintiff was suing the state of Colorado or the Forest Service or the Parks Recreation Department, that language would be important when discussing the release. But plaintiff is not suing those entities. He's just suing Learn to Select the Distance, Inc. Yes. Let's play this out, though, for a second. I mean, the argument that I understood Mr. Dunleavy to be making was that in part you had Mr. Hamrick looking at this release. And so the question is how he would have perceived it. And as to your second aspect of the deletions, all of that additional verbiage that I think I understand you to say was irrelevant, can't clutter arguably create ambiguity? And why, if that is true, would that not be the case here? In other words, if you have a lot of stuff in a release that is not relevant to the plaintiff in question, could it not obscure the big picture point of the release, which would be a release of liability? Taking the last part of your question first, is it possible that clutter could create an ambiguity? I would say yes, that is possible and hypothetical. If you had a ton of language which had nothing to do with the release and would confuse a reasonable person, but that's not the situation here. The phrase or my child, even though it's repeated, doesn't create an ambiguity. And the phrase identifying the governmental entities, although it's long, is just used once. So it's not going to create an ambiguity. And I think behind your honor's question is a need to understand that when determining if something is ambiguous or not, we have to assume a reasonable person reading the release with a reasonable level of intelligence. Gerald Hamrick is an adult with a college education. The inclusion of the phrase about Forest Service and Parks and Recreation Department would not confuse a reasonable adult with a college education. Let me ask you about the district court's decision not to allow additional discovery under 56D. The argument, as I understand it from Mr. Dunleavy, is that that discovery was critical to the issues that were present in the complaint, the operative complaint. And that without that discovery, they were not in a position to defend against the summary judgment. If I understand your honor's question, did plaintiff need discovery in order to defeat summary judgment directed to the existing complaint, not the amended complaint? And the answer is no. In his motion about discovery, he simply quoted the language of the restatement on how you list the contact states, place of contracting, place of negotiation, et cetera, et cetera, and then said, need discovery. Well, all those things are going to lead to just two states. It's either going to be Colorado or Texas. So the first step of the restatement under most significant relationship test is already done. You don't need any more discovery. It's either Colorado or Texas. Those are the only contact states that anybody's talking about. The problem is plaintiff stops at that point, and that's not the end of the analysis. That's just the first step of the analysis. Once you identify the contact states, then you have to identify the policies behind the laws in conflict, then ask if those policies apply, and then apply the presumption of the restatement. So no, plaintiff did not need any discovery to respond to summary judgment addressed to the existing complaint, as opposed to the proposed amended complaint. Does that answer your honor's question? Yes. What about the challenge to the data? I would say they didn't raise it on appeal. In their opening brief, they list the issues raised on appeal. They did not list the order not allowing them to designate an expert out of time. So it's not an issue that they pursued on appeal. So that order stands, and therefore, this court cannot consider anything the expert said in support of the motion to amend the complaint. Plaintiff didn't appeal the order denying his motion to allow an expert out of time. And the order is also right for 10 other reasons, but that's the main reason to answer your question. And I have nothing further unless the court has more questions. Hey, counsel, Mr. Dunleavy, you got some rebuttal? Yes, your honor. Since Mr. Mead addressed the find them to be abhorrent, it allows releases, but we have a different standard. The Colorado standard, clear and conspicuous, Texas has addressed that question, as Mr. Mead said, the dresser case, but that was 1993. We now have the Texas Business and Commerce Code, and it does say conspicuous means a heading and capitals equal to or greater in size than the contrasting type font or color language in the body of the record in larger type, in contrasting type or color language that is set off. These are the requirements to expressly release language, excuse me, expressly release negligence. You must expressly state so, and you must do it in a conspicuous manner. Are they requirements or illustrations? No, those are illustrations of how you can meet the requirements. So you are illustrations. No, your honor. They are. This is how you can do it. And something in that list you have to do, or you have to do something that's equivalent, which is not done here. Something that's not an exhaustive list, but you must expressly state negligence in a conspicuous way, which this release does not. Well, that doesn't say you have to state negligence in a prominent way, a conspicuous way. It's that you have to state the fact that they're releasing liability in a prominent way. Your honor, when you look at the dresser case and you take that in the context of the statute, you must state in Texas negligence expressly. That's why we call it the express negligence rule. Well, and they do state negligence expressly, and they have release of liability and user indemnity agreement for Wilderness Expeditions, Inc. bolded and underlined. And then they have bolded by signing initials below, I certify this is a release of liability, and they do that twice. So you're not saying, are you, that the Texas rule, that this would not qualify under Texas law as a matter of law because negligence, the word negligence isn't bolded, are you? Go ahead and answer. Uh, I absolutely am your honor. It must expressly state negligence in say, excuse me, it must expressly state negligence in a conspicuous way, different type, different color in order to satisfy the Texas rule. With that, uh, my time has expired. And counsel, we understand your arguments. We appreciate your appearance today and your excuse in the case, um, shall be submitted. Thank you, your honor.